IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM BRYAN SORENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| THE ESTATE OF WARDEN GARY | § | |
| MOHR, in his Individual | § | CIVIL ACTION NO. H-05-1195 |
| Capacity, ASSISTANT WARDEN | § | |
| ROBERT CHANCE, in his | § | |
| Individual Capacity, KELLI | § | |
| WARD, in her Individual | § | |
| Capacity, and JANIE COCKRELL, | § | |
| in her Individual Capacity, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, William Bryan Sorens, brings this action for declaratory relief and damages against defendants, The Estate of Warden Gary Mohr, Assistant Warden Robert Chance, Kelli Ward, and Janie Cockrell in their individual capacities, under Texas state law and under 42 U.S.C. § 1983 for violation of civil rights guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution. Pending before the court is Defendants' First Amended Motion to Dismiss for Failure to State a Claim (Docket Entry No. 10). For the reasons set forth below, defendants' motion will be granted in part and denied in part, and plaintiff will have thirty (30) days from the entry of this Memorandum Opinion and Order to file an amended complaint.

## I.  <u>Standard of Review</u>

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom</u> <u>Cloud v. United States</u>, 122 S.Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>Id</u>.  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 998 (2002) (quoting <u>Hishon v. King & Spalding</u>, 104 S.Ct. 2229, 2232 (1984)).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

<u>Id.</u> at 997 (quoting <u>Scheuer v. Rhodes</u>, 94 S.Ct. 1683, 1686 (1974)). <u>See also</u> <u>Conley v. Gibson</u>, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

## II.  <u>Plaintiff's Factual Allegations</u>

Plaintiff, a former inmate in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ), alleges that on March 18, 2003, while still incarcerated he was subjected to a sham disciplinary charge for a prison rule violation in retaliation for having published articles critical of TDCJ.  Plaintiff alleges that the application of this prison rule to him violated his rights to due process and free expression, caused him to lose good-time credits, which delayed his release from TDCJ, and caused him to suffer money damages because TDCJ wrongfully prohibited him from writing for pay.[1]

Plaintiff specifically alleges that on February 7, 2005, he was released on mandatory supervision after 21 years of incarceration.  Throughout most of his incarceration, plaintiff wrote and sold articles for publication.  Plaintiff alleges that in 2001 after publishing the first in a series of two articles critical of TDCJ, TDCJ began a campaign of retaliation against him. Plaintiff alleges that the first article appeared in <u>Playboy Magazine</u> in its March 2003 edition, and that the second article, titled "Locked Down and Locked Out: An Inside View of Prison Censorship," was purchased by <u>Penthouse Magazine</u> and scheduled for publication in the April 2003 issue.[2]

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 1-2.

[2]<u>Id.</u> at ¶ 24.

Plaintiff alleges that Warden Mohr reprimanded him for encouraging his correspondents to read the magazines that published his articles, threatened him with disciplinary action, and ultimately charged him with a Level 2, Code 1.5 disciplinary infraction for having "establish[ed] an unauthorized business within TDCJ."[3]  At a disciplinary hearing held on March 18, 2003, plaintiff was found guilty and assessed a punishment that consisted of 30 days of commissary and cell restriction, loss of 180 days of good time, and reduction in line class from State Approved Trusty III to Line 1.[4]  Plaintiff specifically states that

> Warden Mohr did not tell [him] that he could not write
> articles for publication, or that he could not sell
> articles for publication.  Warden Mohr only told [him]
> that he could not ask his correspondents to support the
> publications that purchased and published his articles
> because, in Warden Mohr's opinion, [p]laintiff had a
> financial interest in the success of the magazines.[5]

Plaintiff alleges that he filed a Step 1 Grievance appealing the finding of guilt and punishment assessed at the disciplinary hearing, which Assistant Warden Robert Chance denied on March 22, 2003.  Plaintiff alleges that Warden Chance justified the denial of his Step 1 grievance by citing TDCJ Administrative Directive 03.02, "Impermissible Offender Conduct and Special Privileges," which was

---

[3]Id. at ¶ 28.

[4]Id.

[5]Id. at ¶ 22.

-4-

not applicable to him.  Plaintiff alleges that Warden Chance then changed his job assignment to a polluted and hazardous factory job that did not comport with his medical classification and restrictions.  Plaintiff alleges that when his family contacted Warden Chance about the new job assignment, Warden Chance reassigned him an equally polluted job that required him to work in an atmosphere of dust and boric acid.  Plaintiff alleges that when his family again objected, Warden Chance had him transferred to the maximum security prison unit that houses male death row inmates.[6]

Plaintiff alleges that on March 26, 2003, he filed a Step 2 Grievance, which was denied on April 8, 2003, by Kelli Ward, Administrative Assistant for the TDCJ Grievance Department.[7]

Plaintiff alleges that on or about May 11, 2003, an Associated Press article that questioned the propriety of plaintiff's disciplinary case appeared in newspapers of various Texas cities, including Austin, San Antonio, and Houston.[8]  Shortly thereafter, on May 21, 2003, plaintiff received notice from former TDCJ Director Cockrell that she had restored the good time lost as a result of the disciplinary action.  Plaintiff alleges that

---

[6]Id. at ¶¶ 30-32.

[7]Id. at ¶¶ 33-34.

[8]Id. at ¶ 35.

> Cockrell's action was a procedural maneuver calculated to
> avoid judicial review of TDCJ's conduct.  With the
> restoration of the lost good time, [p]laintiff had no
> standing to file federal writ of habeas corpus because
> the disciplinary sanction no longer adversely affected
> his protected liberty interest in his mandatory release
> date, even though the practical effect of the loss of
> line class was to delay [his] mandatory release by 41
> days.[9]

Plaintiff alleges that TDCJ subsequently banned <u>Penthouse</u> from its

institutions, but "did not ban any other adult magazine."[10]

### III.  <u>**Defendants' Motion to Dismiss**</u>

Plaintiff alleges that defendants knowingly and intentionally

retaliated against him in violation of rights guaranteed by the

First, Eighth, and Fourteenth Amendments to the United States

Constitution by singling him out for a disciplinary action in which

he was charged with violating TDCJ Disciplinary Rule 15.1, for

"[e]stablishing and/or operating an unauthorized business or

enterprise within TDCJ."[11]  Defendants argue that plaintiff has

failed to state a claim for which relief may be granted because his

claims are barred by the Prison Litigation Reform Act (PLRA), 42

U.S.C. § 1997e(e), and because he has failed to allege either the

violation of a constitutional right or how the named defendants

were personally involved in any such violation.

---

[9]<u>Id.</u> at ¶ 36.

[10]<u>Id.</u> at ¶ 37.

[11]<u>Id.</u> at ¶ 41.

**A.    Prison Litigation Reform Act**

Citing Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005), defendants argue that plaintiff's First Amendment claim should be dismissed for the failure to allege a physical injury.  In Geiger the Fifth Circuit held that § 1997e(e) of the PLRA applies to all federal actions in which a prisoner alleges a violation of constitutional rights.  Id. at 375.  Section 1997e(e) states that "[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Defendants argue that plaintiff's claims are barred by § 1997e(e) because he has failed to allege that he suffered a physical injury as a result of their alleged violation of his constitutional rights.

Plaintiff argues that defendants' reliance on § 1997e(e) is misplaced because he has not alleged a mental or emotional injury, and because he was not confined in a jail, prison, or other correctional facility when he filed suit.  Although plaintiff alleges that the constitutional violations that he suffered occurred while he was a state prisoner, since he alleges that he had been released from confinement and was not incarcerated when he filed suit, the court concludes that the PLRA is not applicable to plaintiff's claims.  See Gay v. Texas Department of Corrections

-7-

State Jail Div., 117 F.3d 240, 241-242 (5th Cir. 1997) ("person who files a notice of appeal while in prison is subject to the filing-fee requirements of the PLRA despite subsequent release from prison"); Castillo v. Asparion, 109 Fed. Appx. 653, 655 (5th Cir. 2004) (unpublished) ("application of PLRA depends upon whether the litigant was incarcerated at the time of filing").

**B.   Section 1983 Claims**

Plaintiff brings this action under Title 42 U.S.C. § 1983 for violation of civil rights guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution.  "Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  It is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere."  Colson v. Grohman, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing Albright v. Oliver, 114 S.Ct. 807 (1994).

> Section 1983 provides that any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . 'Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates.' Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1573 (5th Cir. 1989).  'Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983.' Id.

-8-

Harrington v. Harris, 118 F.3d 359, 365 (5th Cir.), cert. denied,
118 S.Ct. 603 (1997).  In this case plaintiff alleges that defend-
ants targeted him

> for retaliation because he wrote and published articles
> critical of the TDCJ; intentionally treated him
> differently than other similarly situated prisoners
> because of the content of his writings; and acted
> unconstitutionally to chill and suppress his freedom of
> speech and expression to prevent [him] from writing and
> publishing additional articles critical of the TDCJ.[12]

Plaintiff contends that "[d]efendants Chance and Ward used the
TDCJ's grievance procedure to facilitate these constitutional
violations,"[13] and that Cockrell's restoration of his good time was
"a calculated effort to further the retaliation against [him] by
mooting his federal petition for writ [of] habeas corpus
challenging the disciplinary sanction and avoiding judicial review
of the conduct of the TDCJ and its employees."[14]

   1.   Retaliation

   To state a § 1983 claim of retaliation for the exercise of
free speech, plaintiff must allege:  (1) the defendants were acting
under color of state law;[15] (2) plaintiff's speech activities were

---

[12]Plaintiff's Response to Defendants' Motion to Dismiss, Docket
Entry No. 9, pp. 4-5.

[13]Id.

[14]Id. at p. 4.

[15]Defendants do not dispute that they were all state employees
when the challenged acts occurred and that the acts all occurred
under color of state law.

protected under the First Amendment; (3) the defendants intended to retaliate for the exercise of that right; (4) plaintiff suffered a retaliatory adverse act; and (5) but for defendants' retaliatory motive the adverse act complained of would not have occurred.  See id.; Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), cert. denied sub nom Palermo v. Woods, 116 S.Ct. 800 (1996); Johnson v. Rodriquez, 110 F.3d 299, 310 (5th Cir.), cert. denied, 118 S.Ct. 559 (1997); Freeman v. Texas Dept. of Criminal Justice, 369 F.3d 854, 863 (5th Cir. 2004).  Proof of retaliatory intent requires "direct evidence of motivation or . . . 'a chronology of events from which retaliation may plausibly be inferred.'"  Woods, 60 F.3d at 1166 (quoting Cain v. Lane, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988) (merely alleging the ultimate fact of retaliation is insufficient)).  In the context of this case a retaliatory adverse action is an action taken in an effort either to chill plaintiff's exercise of his right to free speech, or to punish him for having exercised that right.  Johnson, 110 F.3d at 310.  Any alleged "chill" of protected rights must be more than "minimal" and not "wholly subjective."  United States v. Ramsey, 97 S.Ct. 1972, 1982 (1977).  "To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them," the Fifth Circuit has cautioned courts to "carefully scrutinize" retaliation claims.  Woods, 60 F.3d at 1166.

(a)  First Amendment Right to Free Speech

"A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest." Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (citing Pell v. Procunier, 94 S.Ct. 2800, 2806-2807 (1974) (upholding regulation banning face-to-face media interviews with specific prisoners because First Amendment does not give the media greater access to prisons than it gives ordinary citizens); and Procunier v. Martinez, 94 S.Ct. 1800, 1811 (1974) (prison regulation governing outgoing mail would be upheld if regulation furthered substantial governmental interests of security, order, and/or rehabilitation, and if regulation was no greater than necessary to further legitimate governmental interest involved), overruled in part, Thornburgh v. Abbott, 109 S.Ct. 1874, 1881-1882 (1989)) (prison regulation governing receipt of subscription publications by federal inmates would be upheld if reasonably related to legitimate penological interests). "The Supreme Court has held that 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Jackson, 864 F.2d at 1248 (quoting Turner v. Safley, 107 S.Ct. 2254, 2261 (1987)). The Supreme Court has explained that "such a standard is necessary if 'prison administrators . . ., and not the courts, [are] to make the difficult judgments concerning institutional operations.'"

<u>Turner</u>, 107 S.Ct. at 2261-2262 (quoting <u>Jones v. North Carolina</u> <u>Prisoners' Labor Union</u>, 97 S.Ct. 2532, 2539 (1977)).  "While we deal here with an action rather than a regulation, the same standard is applicable to determine if the prison authorities' response to [plaintiff's] writing is constitutionally permitted." <u>Jackson</u>, 864 F.2d at 1248.

Plaintiff's complaint alleges that defendants charged him with a prison disciplinary action in retaliation for publishing articles critical of TDCJ alleges the violation of a well established constitutional right to be free from governmental interference in his contacts with the media if that interference is based on the content of his writings.  <u>See</u> <u>Martinez</u>, 94 S.Ct. at 1811.  In <u>Martinez</u> the Supreme Court explained that

> [p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements.  Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. . . [T]he limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

<u>Id</u>.  <u>See also</u> <u>Crawford-El v. Britton</u>, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc) ("retaliation against [plaintiff] for criticism of the prison administration that was truthful, and not otherwise offensive to some penological interest . . . would have violated a clearly established [constitutional] right").

(b)  Actions of Individual Defendants

-12-

Supervisory officials may be held liable in § 1983 actions only if (1) they affirmatively participated in the acts that caused a deprivation of plaintiff's constitutional rights, or (2) they implemented unconstitutional policies that caused plaintiff's injury.  Monell v. Department of Social Services of the City of New York, 98 S.Ct. 2018, 2037 (1978) (no respondeat superior liability in § 1983 actions); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (liability under § 1983 requires personal involvement).  Personal involvement is an essential element of a civil rights cause of action and requires plaintiff to establish an affirmative link between his injuries and a defendant's personal conduct.  Thompson, 709 F.2d at 382 (citing Rizzo v. Goode, 96 S.Ct. 598, 604-605, 607 (1976) (affirmative link needed between injury and conduct of defendant)).  Failure to specifically allege an individual defendant's personal involvement in the alleged unconstitutional action is grounds for dismissal.  Lynch v. Cannatella, 810 F.2d 1363, 1377 (1987) (an individual defendant is entitled to a specific recital of the wrongs he is alleged to have personally perpetrated on the plaintiff).

### (1)  Mohr

Plaintiff alleges that in July of 2002 Mohr reprimanded him for encouraging his correspondents to read the magazines that published his articles, that he had no First Amendment rights in

-13-

his outgoing correspondence, and that he could not ask his correspondents to support the publications that purchased and published his articles because, in Mohr's opinion, plaintiff had a financial interest in the success of the magazines.[16]   Plaintiff alleges that Mohr's admonitions establish that Mohr was monitoring his correspondence and knew that he was writing and selling articles for publication.[17]   Plaintiff alleges that shortly after his typing equipment, radio equipment, and medications were confiscated on February 21, 2003, Mohr interrogated him about his publications and that he told Mohr that he had authored an article critical of TDCJ that was published in the San Antonio Express-News and that he was writing an article on prison censorship.[18]   Plaintiff alleges that Mohr subsequently charged him with a Level 2, Code 15.1 disciplinary infraction.[19]

Plaintiff's complaint alleges that Mohr filed a disciplinary action against him in retaliation for having published articles that criticized TDCJ and alleges that Mohr violated a well established constitutional right, i.e., plaintiff's right to be free from governmental interference in his contacts with the media based on the content of his writings.   Plaintiff alleges that he

---

[16]Plaintiff's Original Complaint, Docket Entry No. 1, ¶¶ 21-22.

[17]Id. at ¶ 23.

[18]Id. at ¶¶ 26-27.

[19]Id. at ¶ 28.

suffered an adverse retaliatory act sufficient to chill his
exercise of constitutional rights, i.e., a disciplinary charge.
Plaintiff's complaint that Mohr had known for years that he sold
articles for publication but charged him with a disciplinary action
for selling articles only after admitting that he had published an
article critical of TDCJ and was working on an article about prison
censorship, alleges a chronology of events from which it may
reasonably be inferred that retaliatory intent motivated Mohr's
decision to file the disciplinary action, and that but for Mohr's
retaliatory intent Mohr would not have filed the disciplinary
action. Accordingly, the court concludes that plaintiff's allega-
tions state a retaliation claim against Mohr.

### (2) Chance

Plaintiff alleges that Chance denied his September 1 grievance
and then changed his job assignment.[20] Plaintiff alleges that
Chance changed his job assignment twice: first to an environ-
mentally polluted and hazardous factory job that contradicted his
medical restrictions and then, following complaints from his
family, to another equally polluted factory job. Plaintiff alleges
that after more complaints from his family Chance transferred him
to the maximum security prison unit that houses male death row

---

[20]<u>Id.</u> at ¶¶ 31-32.

-15-

prisoners.[21] Although plaintiff fails to allege that Chance knew that he had published articles critical of TDCJ or knew the content of those articles, fails to allege facts from which Chance's retaliatory intent could be inferred, and fails to allege that a causal connection exists between Chance's denial of his Step 1 grievance and the alleged deprivation of his First Amendment right to free expression, the court is unable to conclude that it appears beyond doubt that the plaintiff can prove no set of facts in support of his retaliation claim against Chance that would entitle him to relief.  See Conley, 78 S.Ct. at 102 (dismissals should be granted only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim to relief).

### (3)   Ward

Plaintiff alleges that Ward denied his Step 2 grievance.[22] Defendants argue that plaintiff's claims against Ward should be dismissed because they are based only on his dissatisfaction with Ward's review of and response to his Step 2 grievance, and because the mere fact that Ward reviewed and ruled unfavorably on his grievance does not confer liability on her.[23]  Plaintiff responds that his allegations are not that Ward failed to investigate or

---

[21]Id. at ¶ 32.

[22]Id. at ¶ 33.

[23]Defendants' First Amended Motion to Dismiss, Docket Entry No. 10, p. 4.

resolve his grievance, but that like Cockrell, Ward targeted him for retaliation because he wrote and published articles critical of the TDCJ. Plaintiff argues that Ward intentionally treated him differently than other similarly situation prisoners because of the content of his writings, and used the TDCJ grievance procedure to facilitate the violation of his constitutional rights.

Although, like his allegations against Chance, plaintiff's allegations against Ward fail to allege that Ward knew plaintiff had published articles critical of TDCJ and fail to allege facts showing either Ward's retaliatory intent or that but for Ward's retaliatory intent Ward would not have denied plaintiff's Step 2 grievance, the court is unable to conclude that it appears beyond doubt that the plaintiff can prove no set of facts in support of his retaliation claim against Ward that would entitle him to relief. See Conley, 78 S.Ct. at 102.

### (4) Cockrell

Defendants argue that the claims plaintiff has alleged against Cockrell should be dismissed because Cockrell restored the good-time credits that plaintiff lost as a result of the disciplinary charge that Mohr filed, and because plaintiff's claims against Cockrell are based on her position as a supervisory official at TDCJ and are not based on her personal involvement in the disciplinary proceedings. Plaintiff responds that Cockrell's

restoration of his good time was not an act of benevolence but, instead, "a calculated effort to further the retaliation against [him] by mooting his federal petition for writ [of] habeas corpus challenging the disciplinary sanction and avoiding judicial review of the conduct of TDCJ and its employees."[24]  Plaintiff also asserts that "[d]efendants are in possession of the writing memorializing [d]efendant Cockrell's personal involvement in the violation of [his] constitutionally protected First and Fourteenth Amendment rights."[25]

Plaintiff's allegations against Cockrell are that once she knew about the disciplinary charge that allegedly caused the deprivation of his constitutional rights, Cockrell restored his good time in an effort to correct the alleged violation of constitutional rights caused by the disciplinary action.  Since plaintiff's only allegations of Cockrell's personal involvement in his disciplinary proceeding are that she took corrective action to restore his good time once she discovered that her subordinates might have violated his constitutional rights, the court concludes that plaintiff's allegations fail to state a retaliation claim against Cockrell because no inference of retaliatory intent can be drawn from his allegations of Cockrell's personal involvement in his disciplinary proceedings.

---

[24]Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 9, p. 4.

[25]Id.

Plaintiff's allegations that Cockrell took corrective action to restore his good time distinguishes the allegations that plaintiff has asserted against Cockrell from those that he has asserted against Chance and Ward, who allegedly had the opportunity to take corrective action when they reviewed plaintiff's Step 1 and Step 2 grievances, but failed to provide plaintiff any relief. Since plaintiff has failed to allege that Cockrell engaged in any act that deprived him of a constitutional right, the court concludes that plaintiff's allegations against her fail to state a § 1983 claim for which relief may be granted. See Reimer v. Smith, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.").

2.  <u>Due Process</u>

Plaintiff alleges that he was

disciplined for ostensibly violating TDCJ Disciplinary Rule 15.1, a Level 2 [o]ffense that, at the time of the alleged violation, read:  "Establishing and/or operating an unauthorized business or enterprise within TDCJ."  The disciplinary rule [d]efendants' applied to [p]laintiff was not intended [to] cover his activity, and therefore its application to him violated his Fourteenth Amendment right to Due Process of Law.  Due process requires fair notice of prohibited conduct before a sanction can be imposed.   Plaintiff had no notice of the prohibited conduct prior to the imposition of the sanction.  The charge and sanction therefore violated [p]laintiff's

clearly established Fourteenth Amendment right to Due Process of Law.[26]

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Three types of § 1983 claims may be brought against state actors under the Due Process Clause of the Fourteenth Amendment. See Zinermon v. Burch, 110 S.Ct. 975, 983 (1990). First, the Due Process Clause incorporates specific protections defined in the Bill of Rights. Thus, plaintiff may bring suit under § 1983 for defendants' alleged violation of his First Amendment right to freedom of speech. Id. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." Id. (quoting Daniels, 106 S.Ct. at 664). For either of these two types of due process claims the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. Id. (citing Daniels, 106 S.Ct. at 678). Third, the Due Process Clause contains a procedural component that allows actions to be brought for the deprivation of a constitutionally protected interest in life, liberty, or property without due process of law. Id. (citing Parratt v. Taylor, 101 S.Ct. 1908, 1913 (1981), overruled in part on other grounds,

---

[26] Id. at ¶ 41.

-20-

Daniels v. Williams, 106 S.Ct. 662 (1986)).  See also Carey v. Piphus, 98 S.Ct. 1042, 1050 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. Thus, in deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that 'procedural due process rules are shaped by the risk of error inherent in the truth-finding process.'").  For this type of due process claim the constitutional violation actionable under § 1983 is not complete when a deprivation occurs but, instead, is complete only when the state fails to provide due process.  Id.  In Carey the Court explained that a deprivation of procedural due process is actionable under § 1983 without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards.  98 S.Ct. at 1053 (even if the deprivation was in fact justified, so the plaintiffs did not suffer any "other actual injury" caused by the lack of due process, "the fact remains that they were deprived of their right to procedural due process").  Nevertheless, in cases where the deprivation would have occurred anyway, and the lack of due process did not itself cause any injury (such as emotional distress), the plaintiff may recover only nominal damages.  Id. at 1052.

Plaintiff fails to allege which due process theory he is attempting to allege and has failed to allege how each defendant

was personally involved in the deprivation of his right to due process. Nevertheless, because the Fifth Circuit has held that the filing of retaliatory disciplinary charges can give rise to an independent § 1983 action or can be part of a procedural due process review of the disciplinary action, Woods, 60 F.3d at 1165, and has also held that it is a violation of due process to punish inmates for acts they could not have known were prohibited, Gibbs v. King, 779 F.2d 1040, 1044 (5th Cir.), cert. denied, 106 S.Ct. 1975 (1986), the court is unable to conclude that it appears beyond doubt that the plaintiff can prove no set of facts in support of a due process claim against any of the defendants. See Conley, 78 S.Ct. at 102.

3.   Equal Protection

Plaintiff alleges that he

was targeted for retaliation because of the content of his writings. TDCJ officials have been aware that [he] wrote and sold articles for publication since 1986 and is aware that a number of other prison writers have and continue to write and sell articles for publication, without sanction or threat of sanction. Yet, following [his] negotiations with editors to write and publish articles critical of TDCJ, [d]efendants motivated by retaliatory animus, intentionally treated [him] differently than other similarly situated prisoners on account of the content of his writings. Defendants singled out [p]laintiff from other similarly situated prisoners and applied prison policies, practices and procedures in a discriminatory fashion so as to deny [p]laintiff his clearly established constitutional right to equal protection of the law.[27]

_____

[27]Id. at ¶ 40.

-22-

The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike.  See Stefanoff v. Hays County, Tex., 154 F.3d 523, 525-526 (5th Cir. 1998) (citing Rolf v. City of San Antonio, 77 F.3d 823, 828 (5th Cir. 1996)).  To state an equal protection claim plaintiff must allege that defendants (1) "created two or more classifications of similarly situated prisoners that were treated differently, . . . and (2) that the classification had no rational relation to any legitimate governmental objective."  Id. at 526 (citing Johnson, 110 F.3d at 307).  "If the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws."  Id. (citing Johnson, 110 F.3d 307).  Plaintiff must also allege facts demonstrating that defendants acted with a "discriminatory purpose."  Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).  "Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."  Id. (quoting United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992)).

The existence of a discoverable group or classification antedating the challenged state action is required to prove purposeful discrimination because it cannot tenably be maintained

that the state selected a particular course of action to harm an
identifiable group when that body did not exist until <u>after</u> the
state acted.  <u>Johnson</u>, 110 F.3d at 307.  Plaintiff's allegations
that defendants retaliated against him by charging him with
violating a prison rule that he alleges did not apply to him, does
not allege the existence of a discoverable group or classification
antedating the challenged actions but, instead, alleges only that
plaintiff suffered a disparate impact when that rule was wrongly
applied to him.  "Disparate impact alone cannot suffice to state an
Equal Protection violation; otherwise, any law could be challenged
on Equal Protection grounds by whomever it has negatively
impacted."  <u>Id.</u> at 306.  Since plaintiff's allegations allege only
that he was disparately impacted by the application of a prison
rule that he alleges was wrongfully applied to him, the court
concludes that plaintiff's equal protection claims should be
dismissed for failure to state a claim for which relief may be
granted.

**C.   Qualified Immunity**

Defendants argue that they are entitled to qualified immunity
from plaintiff's claims because their "actions did not violate
[p]laintiff's First Amendment right to free speech, they only
infringed on his rights to profit from his writings.  The right to

profit from one's writings while in prison is not a constitutionally protected right."[28]  Qualified immunity protects government officials from suits brought against them in their individual capacities unless plaintiff alleges facts showing that (1) the defendants violated a clearly established constitutional right, and (2) defendants' conduct was objectively unreasonable in light of the legal rules clearly established when the actions at issue occurred.  See Alexander v. Eeds, 392 F.3d 138, 144 (5th Cir. 2004); Thomas v. City of Dallas, 175 F.3d 358 (5th Cir. 1999).

Although plaintiff has not responded to defendants' assertion of qualified immunity, the court concludes that the right asserted in plaintiff's complaint, an inmate's First Amendment right to be free from governmental interference in their contacts with the press if that interference is based on the content of their writings, was well established in March of 2003 when plaintiff alleges defendants falsely filed a disciplinary charge against him. See Martinez, 94 S.Ct. at 1811; Crawford-El v. Britton, 93 F.3d at 826.

Whether the defendants' conduct was objectively reasonable depends on the circumstances controlling the defendants as well as clearly established law in March of 2003.  In Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995) (en banc), the Fifth Circuit held that if

---

[28]Defendants' First Amended Motion to Dismiss, Docket Entry No. 10, p. 6.

a defendant raises the defense of qualified immunity, the district court may order the plaintiff to file a reply tailored to answer the defendants' assertion of qualified immunity.  <u>Id.</u> at 1431. Moreover, in cases involving an allegation of improper motive the district court may <u>sua sponte</u> order the plaintiff to "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." <u>Crawford-El v. Britton</u>, 118 S.Ct. 1584, 1596-1597 (1998).

## IV.  <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that plaintiff has failed to state a claim for retaliation based on the exercise of his First Amendment right to free speech against Cockrell, and that Cockrell's motion to dismiss the retaliation claim that plaintiff has alleged against her should be dismissed for failure to state a claim upon which relief may be granted.  The court concludes that defendants' motion to dismiss the retaliation claims alleged against Mohr, Chance, and Ward should be denied.

For the reasons explained above, the court concludes that defendants' motion to dismiss the equal protection claims that plaintiff has alleged against all the defendants should be granted, but that defendants' motion to dismiss the due process claims that plaintiff has alleged against all defendants should be denied.

Plaintiff is **ORDERED** to respond to defendants' assertion of

qualified immunity by filing an amended complaint within thirty (30) days.  Fed. R. Civ. P. 7(a).  Plaintiff's amended complaint shall set forth facts identifying each defendant's personal involvement in each alleged infringement of plaintiff's constitutional rights, and shall state why each defendant's actions were unreasonable in light of clearly established law.  Plaintiff's response shall identify who did what to whom, when, where, and why -- although when "why" means the actor's state of mind, it may be averred generally.  Fed. R. Civ. P. 8(a).  Defendants' First Amended Motion to Dismiss (Docket Entry No. 10) is therefore **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE TO BEING REURGED FOLLOWING THE SUBMISSION OF PLAINTIFF'S AMENDED COMPLAINT.** Defendants' Motion to Dismiss (Docket Entry No. 7) is **MOOT**.

The initial pretrial and scheduling conference set for Friday, September 16, 2005, at 2:00 p.m., is **RESCHEDULED** for Friday, December 2, 2005, at 3:00 p.m., in Courtroom 9-B, 9th Floor, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 16th day of August, 2005.

SIM LAKE
UNITED STATES DISTRICT JUDGE